# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
### ABINGDON  DIVISION

| | | |
|---|---|---|
| **CANAL INSURANCE COMPANY**, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 1:07CV00050 |
| | ) | |
| v. | ) | **OPINION AND ORDER** |
| | ) | |
| **LEBANON INSURANCE AGENCY, INC.,** | ) | By:  James P. Jones |
| | ) | Chief United States District Judge |
| | ) | |
| Defendant. | ) | |

*Donald R. Morin and Marc A. Peritz, Morin & Barkley LLP, Charlottesville, Virginia, for Plaintiff; James N.L. Humphreys, Hunter, Smith & Davis, LLP, Kingsport, Tennessee, for Defendant.*

In this diversity action by an insurance company seeking indemnification from an insurance agency for an alleged mistake in submitting a policy application, the defendant moves to dismiss the plaintiff's claim as insufficient.  For the reasons that follow, I will grant the motion in part and deny it in part.

I

The plaintiff, Canal Insurance Company ("Canal"), seeks recovery from the defendant, Lebanon Insurance Agency, Inc. ("Lebanon Insurance"), for the amount Canal paid in settlement of a claim by a policyholder under a motor vehicle liability insurance policy.  Lebanon Insurance has moved to dismiss the Complaint as

insufficient as a matter of law pursuant to Federal Rule of Civil Procedure 12(b)(6).

The Motion to Dismiss has been briefed and argued and is now ripe for decision.[1]

For the purposes of this motion, I must accept the allegations made by Canal in its Complaint as true.

Lebanon Insurance is an insurance agency located in Lebanon, Virginia. Canal is an insurance company headquartered in Greenville, South Carolina. On December 1, 1998, after receiving an application from Lebanon Insurance, Canal issued a commercial motor vehicle insurance policy to Jim Rowe Trucking and Excavating, Inc. ("Jim Rowe Trucking"). Lebanon Insurance was at the time a party to a certain Brokerage Agreement (the "Agreement") dated May 9, 2002, with Piedmont Transportation Underwriters, Inc. ("Piedmont"), a North Carolina corporation and Canal's general agent. Pursuant to the Agreement, Piedmont was responsible for placing certain risks of Lebanon Insurance's clients with an insurer. The Agreement did not require that the risk be placed with any particular insurer and left that decision to the discretion of Piedmont. Furthermore, the Agreement made no express reference to Canal or any other third party. The Agreement provides that "[t]he law

---

[1] Jurisdiction of this court exists pursuant to diversity of citizenship and amount in controversy. *See* 28 U.S.C.A. § 1332(a) (West 1993 & Supp. 2007).

Case 1:07-cv-00050-JPJ-PMS   Document 14   Filed 08/24/07   Page 2 of 14   Pageid#: 94

applicable to this Agreement shall be the laws of the State of North Carolina."
(Agreement ¶ E.)

Under Virginia law an insured under a policy of motor vehicle liability insurance is entitled to uninsured/underinsured ("UM") coverage limits equal to the limits of the liability insurance provided by the policy, unless the insured affirmatively rejects the higher UM coverage. *See* Va. Code Ann. § 38.2-2206(A) (Supp. 2006). Under the policy issued to Jim Rowe Trucking, the combined liability coverage limit was $750,000. Jim Rowe Trucking rejected the higher UM limits and thus the policy had a UM bodily injury limit of $50,000 per accident.

On January 8, 2001, Lebanon Insurance submitted an application for "continuing coverage" for Jim Rowe Trucking and mistakenly checked a different box that accepted the higher UM limits. Piedmont subsequently advised Lebanon Insurance that based on this selection, Jim Rowe Trucking's premium would increase.

On January 31, 2001, a new application was submitted by Lebanon Insurance to Piedmont that purported to reject the higher UM limits. Canal alleges that this January 31, 2001 application did not effectively reject the higher UM limits of the policy because it was not actually signed by the policyholder. The application submitted on January 8, 2001, was altered by Lebanon Insurance to make it appear as if Jim Rowe Trucking had actually rejected the higher limits in a separate

-3-

application on January 31, 2001.[2]  Thus, although Jim Rowe Trucking's signature

appeared on the January 31 application, it was not authentic.

During this period of time, Roger Baldwin, an employee of Jim Rowe

Trucking, was injured in a motor vehicle accident in the course of his employment.

Accordingly, he qualified as an insured under the terms of the policy issued by Canal.

The driver responsible for causing his injuries only had liability coverage in the

amount of $50,000. On September 18, 2003, Baldwin made a claim for UM coverage

under the policy in the amount of $700,000, asserting that the higher UM limits of the

policy were effective because Jim Rowe Trucking had not properly rejected these

higher limits on January 31, 2001. After the filing of this claim, Canal conducted an

investigation and discovered that the January 31, 2001 application was an alteration

of the January 8 application. Accordingly, Canal concluded that Jim Rowe Trucking

had not effectively rejected the higher limits of the policy by way of the January 31

application. On December 13, 2005, Canal settled the claim made by Baldwin for

$500,000. Because Canal had believed that the January 31 application manifested a

---

[2]  Canal does not allege any fraud on the part of Lebanon Insurance in altering the
January 8, 2001 application. Rather, it appears that Canal asserts that Lebanon Insurance was
simply negligent in failing to obtain Jim Rowe Trucking's actual signature on the January 31
application.

Case 1:07-cv-00050-JPJ-PMS   Document 14   Filed 08/24/07   Page 4 of 14   Pageid#: 96

proper rejection of the higher UM limits, Canal never collected a higher premium to cover the higher UM coverage.

On June 4, 2007, Canal filed the present action in this court seeking indemnification from Lebanon Insurance for the $500,000 it paid to settle the UM claim by Baldwin. Canal claims that Lebanon Insurance was negligent in failing to obtain the policyholder's signature rejecting the higher UM limits. In its Complaint, Canal asserts two causes of action. Count I claims that Lebanon Insurance is liable based on the legal theory of equitable indemnity. Count II asserts a cause of action of express contractual indemnity, based on the provision of the Agreement providing as follows: "[Lebanon Insurance] agrees to hold PIEDMONT and its employees and representatives completely harmless from, and to reimburse PIEDMONT for, any expense, loss or damage sustained by PIEDMONT by reason of any act or omission of [Lebanon Insurance], its employees or representatives." (Agreement ¶ E.) It is apparent that Canal has asserted these indemnity claims at least in part in order to avoid the bar of the statute of limitations that might otherwise be applicable to a direct claim against Lebanon Insurance.[3]

---

[3] A cause of action for indemnity does not accrue until the payment by the indemnitee to the third party. Va. Code Ann. § 8.01-249(5) (2007).

Case 1:07-cv-00050-JPJ-PMS   Document 14   Filed 08/24/07   Page 5 of 14   Pageid#: 97

II

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) may

be granted only if, accepting all well-pleaded allegations in the complaint as true, and

viewing them in the light most favorable to the plaintiff, the plaintiff is not entitled

to relief. "The issue is not whether a plaintiff will ultimately prevail but whether the

claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes*, 416

U.S. 232, 236 (1974).[4]

A

Count One of the plaintiff's Complaint seeks equitable indemnification for the

damages it alleges were caused as a result of the defendant's actions. "Equitable

indemnification arises when a party without personal fault, is nevertheless legally

liable for damages caused by the negligence of another. Equitable principles allow

the innocent party to recover from the negligent actor for the amounts paid to

discharge the liability." *Carr v. Home Ins. Co.*, 463 S.E.2d 457, 458 (Va. 1995).

---

[4] Lebanon Insurance has submitted an affidavit and alternatively requests that its motion be treated as a motion for summary judgment pursuant to Federal Rule of Civil Procedure 12(b). Lebanon Insurance contends that the original 1998 application rejecting the higher UM limits was in effect at the time of the accident and that Canal was thus mistaken in its voluntary payment of the injured party's claim. While this contention may have merit, I cannot determine it on the present record and because the parties have not had an opportunity to develop the facts, I will not exercise my discretion to convert the present motion to a motion for summary judgment. *See Rubert-Torres ex rel. Cintron-Rubert v. Hosp. San Pablo, Inc.*, 205 F.3d 472, 475 (1st Cir. 2000).

Case 1:07-cv-00050-JPJ-PMS   Document 14   Filed 08/24/07   Page 6 of 14   Pageid#: 98

In an indemnity action, a plaintiff (indemnitee) seeks recovery for discharging the liability of the defendant (indemnitor), even though the defendant may have been solely responsible for causing injuries suffered by a third party. *See Pulte Home Corp. v. Parex, Inc.*, 579 S.E.2d 188, 193 (Va. 2003). An indemnity claim does not seek recovery for any direct harm caused by the defendant to the plaintiff—it is clearly distinct from a direct cause of action. Rather, an indemnity action is derivative of an underlying claim filed by a third party for which the plaintiff was held responsible. At a minimum, under Virginia law, a properly pled indemnity claim must allege that the defendant caused some direct harm to a third party and that the plaintiff discharged the resulting liability from this harm.

Here, Canal's Complaint fails to make any such allegation. The injury at issue in this case is one that was caused directly to Canal as a result of the defendant's alleged negligence in securing a proper rejection of higher UM liability limits of the policy. The injury sustained by the third party, Baldwin, resulted from a motor vehicle accident, and not from any act or omission of Lebanon Insurance. Accordingly, Canal has alleged facts that amount to a direct claim of negligence against the defendant and not a derivative claim for equitable indemnification.[5]

_____

[5] Although the Complaint does not allege that Lebanon Insurance caused any injury to the third party, at the hearing on this motion, Canal advanced the argument that the third party was indeed harmed by Lebanon Insurance's negligence. Canal characterized this injury

Case 1:07-cv-00050-JPJ-PMS   Document 14   Filed 08/24/07   Page 7 of 14   Pageid#: 99

Lebanon Insurance's Motion to Dismiss the claim for equitable indemnification contained in Count I will therefore be granted.

B

Count Two of the Complaint seeks contractual indemnification for the damages Canal alleges it sustained as a result of Lebanon Insurance's failure to obtain the proper rejection of the higher UM limits. Canal argues that it is entitled to this indemnification under the provision of the Agreement between Piedmont and Lebanon Insurance. Though it was not a party to this agreement, it argues that it is a third party beneficiary to the agreement's indemnity provision. Generally, under the third-party beneficiary doctrine, a non-party to a contract may enforce the terms of the contract if certain conditions are met. *See* Restatement (Second) of Contracts § 302(1) (1981).

---

as a "contractual injury." Under this theory, Canal argues that Baldwin was directly injured by the defendant's alleged negligence in rejecting the default coverage and not obtaining the lesser minimum coverage because he did not have full UM coverage until Canal agreed to accept that he did. This argument is unconvincing and finds no support in Virginia case law or common sense. An injury is a "positive, physical or mental hurt." *Locke v. Johns-Manville Corp.*, 275 S.E.2d 900, 904 (Va. 1981). Baldwin was not "injured" by Lebanon Insurance's alleged negligence. In fact, it appears its actions allowed Baldwin to recover nearly $500,000 from the policy that he would not otherwise have been entitled to under the terms of the original policy.

-8-

The parties have assumed that Virginia law applies to this issue and that in any event, North Carolina and Virginia law are identical on the subject. They are wrong on both assumptions.

Sitting in diversity, I must first determine the substantive law of Virginia, the forum state, including its conflicts of law rules, and apply that law. *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496-97 (1941). The Agreement contains a choice of law provision directing that North Carolina law is applicable to the Agreement. Virginia courts have long enforced contractual choice of law provisions as long as such provisions are not unconscionable or in contravention of public policy. *See Tate v. Hain*, 25 S.E.2d 321, 324 (Va. 1943). However, the Virginia Supreme Court has never decided whether a choice of law provision in a contract applies to a party's claim that it is a third-party beneficiary of that contract.

In a diversity case, a federal court must apply the law of the highest court of the state in which it sits. *See Comm'r v. Estate of Bosch*, 387 U.S. 456, 465 (1967). Where a state's law is unclear, the court must predict how the highest court of that state would rule if presented with the issue. *See Brendle v. Gen. Tire & Rubber Co.*, 505 F.2d 243, 245 (4th Cir. 1974). The Virginia Supreme Court has found contractual choice of law provisions enforceable because such provisions effectuate

-9-

the intent of the contracting parties. *See Tate*, 25 S.E.2d at 324 (stating that "the true

test for the determination of the proper law of a contract is the intent of the parties.").

Considering the rationale underlying the Virginia Supreme Court's decision to

enforce a choice of law provision against those who are actually parties to a contract,

I find that it would also apply choice of law provisions to determine whether non-

parties qualify to enforce the terms of such a contract. Applying choice of law

provisions to third-party beneficiary status under the contract, would similarly

effectuate the intent of the contracting parties.

Accordingly, I find that the Agreement's choice of law provision must be

applied in order to determine the plaintiff's status as a third-party beneficiary. *See*

*Am. Patriot Ins. Agency, Inc. v. Mut. Risk Mgmt., Ltd.*, 364 F.3d 884, 890 (7th Cir.

2004) (applying choice of law clause in a contract to third-party beneficiary claim);

*Davidson & Jones Dev. Co. v. Elmore Dev. Co.*, 921 F.2d 1343, 1356 (6th Cir. 1991)

(same). Thus, North Carolina law governs whether the plaintiff may enforce the

contractual indemnification clause of the Agreement as a third-party beneficiary.[6]

---

[6] In assuming that North Carolina and Virginia law are indistinguishable in determining one's status as a third-party beneficiary, Canal nearly made a fatal mistake. There is a difference between the law of these jurisdictions in the type of evidence that may be resorted to in determining a party's status as an intended beneficiary of a contract. Virginia law applies the "four corners" doctrine in determining whether one is an intended beneficiary of a contract. *See Richmond Shopping Ctr. v. Wiley N. Jackson Co.*, 255 S.E.2d 518, 523 (Va. 1979) (stating that "we need look no further than the four corners of this contract to determine that a clear intent has been manifested by [the parties] not to benefit

Under North Carolina law, to obtain the status of a third-party beneficiary to a contract a person must establish (1) the existence of a contract between two other parties; (2) the contract was valid and enforceable; and (3) the contract was entered into for his or her direct, and not incidental, benefit. *Am. Trust Co. v. Catawba Sales & Processing* Co., 88 S.E.2d 233, 240-41 (N.C. 1955). "It is not sufficient that the contract does benefit him if in fact it was not intended for his direct benefit." *Vogel v. Reed Supply Co.*, 177 S.E.2d 273, 279 (N.C. 1970).

While the Agreement provides no express indication that it was entered into for the benefit of Canal, at the present time I cannot rule as a matter of law that Canal cannot prove that it is a third-party beneficiary of the Agreement's indemnity provision.

---

directly this plaintiff . . . ."); *Radosevic v. Va. Intermont College*, 651 F. Supp. 1037, 1039 (W.D. Va 1987) (applying four corners doctrine to third-party beneficiary claim). North Carolina law permits the court to consider extrinsic evidence to determine the intent of the parties regarding any potential third-party beneficiaries. *See CF Indus., Inc. v. Transcon. Gas Pipe Line Corp.*, 448 F. Supp. 475, 479 (W.D.N.C. 1978).

Accordingly, the Fourth Circuit held that a third-party beneficiary claim based on North Carolina law could not be dismissed on a Rule 12(b)(6) motion because the court is required to look beyond the four corners of the contract to determine the intent of the parties regarding the existence of any intended beneficiaries to the contract. *Sys. Craft, Inc. v. British-Am. Ins. Co.*, No. 87-1627, 1987 WL 24472, at *2 (4th Cir. Dec. 2, 1987) (unpublished).

Nevertheless, in spite of the erroneous admission on behalf of Canal that Virginia and North Carolina law are identical, under the circumstances I will not penalize Canal for its counsel's mistake.

Case 1:07-cv-00050-JPJ-PMS   Document 14   Filed 08/24/07   Page 11 of 14   Pageid#: 103

C

While not set forth in its Complaint, Canal asserted at oral argument that even if it has failed to state a valid cause of action for indemnification, it nonetheless has a direct negligence claim against Lebanon Insurance for negligence. In order to forestall any later assertion of this claim, I find that it is barred by the applicable statute of limitations. *See* Va. Code Ann. § 8.01-243 (2007) (providing a five-year statute of limitations for claims involving injury to property).

In calculating whether the time for filing a claim under Virginia law has expired, I must determine from the facts alleged in the Complaint the date of the plaintiff's injury.

Recognizing that Virginia law provides no more than five years from the date it was injured to file a claim, Canal argues that the very earliest it could have been injured was the date Baldwin made a claim against the policy. It misconceives the nature of its injury. "In the absence of injury or damage to a plaintiff or his property, he has no cause of action and no right of action can accrue to him." *Caudill v. Wise Rambler, Inc.,* 168 S.E.2d 257, 259 (Va. 1969). A negligent act and an injury need not occur simultaneously. Where an injury to a party does not occur until after the occurrence of the underlying negligent act, the statute of limitations is measured from the date of the actual injury and not the date of the negligent act. *See First Va. Bank-Colonial v. Baker*, 301 S.E.2d 8, 13 (Va. 1983).

-12-

Here, the injury and the negligent act occurred simultaneously. When Lebanon Insurance failed to execute a proper rejection of the higher UM limits of the policy, Canal was injured because it was entitled to collect a higher premium to insure that risk. Accordingly, Canal's injury was not its exposure to the higher amount of liability or the actual payment it made to settle the claim against the policy. Rather, it was the exposure to such additional liability without the payment of higher premiums from Jim Rowe Trucking that constituted its injury.

It is immaterial that Canal did not discover this injury until Baldwin first made a claim against the policy. Virginia law is clear that the date of injury, not date of discovery of the injury, is the measure for calculating the statute of limitations. "[T]he applicable period of limitation begins to run from the moment the cause of action arises rather than from the time of discovery of injury or damage, and we have said that difficulty in ascertaining the existence of a cause of action is irrelevant." *Comptroller of Va. ex rel. Va. Military Inst. v. King*, 232 S.E.2d 895, 900 (Va. 1977). S*ee* Va. Code Ann. § 8.01-230 (2007) (providing that "[i]n every action for which a limitation period is prescribed, the right of action shall be deemed to accrue and the prescribed limitation period shall begin to run from the date the injury is sustained . . . .").

Therefore, even if Canal had properly pleaded a direct claim for injury to its property by Lebanon Insurance's negligence in obtaining a rejection of the default

-13-

coverage, such a claim is barred by the statute of limitations because Canal's present

action was not filed until 2007, while its injury occurred in 2001.


III

For the reasons stated, the defendant's Motion to Dismiss will be GRANTED

in part and DENIED in part.  The Motion to Dismiss is GRANTED as to Count I and

Count I is DISMISSED.  The Motion to Dismiss is DENIED as to Count II.

It is so **ORDERED**.

ENTER: August 24, 2007

/s/ JAMES P. JONES
Chief United States District Judge