# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ABINGDON DIVISION

| | |
|---|---|
| **CANAL INSURANCE COMPANY**, ) | |
| ) | |
| Plaintiff, ) | Case No. 1:07CV00050 |
| ) | |
| v. ) | **OPINION** |
| ) | |
| **LEBANON INSURANCE** ) | By: James P. Jones |
| **AGENCY, INC., ET AL.,** ) | Chief United States District Judge |
| ) | |
| Defendants. ) | |

*Donald R. Morin, Marc A. Peritz, and Jessica H. Park, Morin & Barkley LLP, Charlottesville, Virginia, for Plaintiff; James N.L. Humphreys, Hunter, Smith & Davis, LLP, Kingsport, Tennessee, for Defendant Lebanon Insurance Agency, Inc., and W. Bradford Stallard and Cameron S. Bell, Penn, Stuart & Eskridge, Abingdon, Virginia, for Defendant Piedmont Transportation Underwriters, Inc.*

In this diversity case, the plaintiff, Canal Insurance Company ("Canal"), seeks indemnity from the defendants, Lebanon Insurance Agency, Inc. ("Lebanon") and Piedmont Transportation Underwriters, Inc. ("Piedmont"), for the sum of $500,000 that Canal paid in settlement of an uninsured/underinsured motorist claim.

Lebanon and Piedmont have both filed Motions to Dismiss Canal's First Amended Complaint. The motions have been briefed and argued and are ripe for decision. For the reasons set forth in this Opinion, I find that Canal paid the claim in error and thus is not entitled to indemnity.[1]

---

[1] In an earlier Opinion, I held that Canal had no claim for equitable indemnity against Lebanon. *Canal Ins. Co. v. Lebanon Ins. Agency*, 504 F. Supp. 2d 113, 117-18 (W.D. Va.

# I

Canal is an insurance company that issued a Business Automobile Liability Policy (the "Policy") to Jim Rowe Trucking and Excavating, Inc. ("Trucking"), a business located in Honaker, Virginia. The period of the Policy was from December 1, 1998, "until cancelled." (Am. Compl. Ex. 1.) The Policy contained a combined single limit of liability of $750,000. Lebanon was a local insurance agency, operating pursuant to a Brokerage Agreement dated November 1, 1993, with Piedmont, Canal's general agent. Piedmont and Canal were parties to an Agency Agreement dated January 1, 1992.

At all times relevant to this case, Virginia law required an automobile liability insurance policy to provide uninsured and underinsured (collectively "UM") coverage in limits equal to the limits of the liability coverage unless the insured had affirmatively rejected that level of coverage "by notifying the insurer as provided in subsection B of § 38.2-2202." Va. Code Ann. § 38.2-2206(A) (2007); *see USAA Cas. Ins. Co. v. Alexander*, 445 S.E.2d 145, 146 (Va. 1994).

Before the Policy was first issued in 1998, Trucking submitted an application signed by its president, Jim Rowe, which contained a rejection of the higher UM

---

2007). Canal then filed a First Amended Complaint, adding Piedmont as a party along with Lebanon, and claimed contractual indemnity against both defendants.

coverage by the checking of a box next to the words, "Reject higher limits and request 25/50/20."[2] (Am. Compl. Ex. 4.) In late 2000, Canal indicated that it planned to continue the policy on the same basis as written and requested a new application and information on any new truck drivers in order to update its records. Trucking submitted another application form, in which it similarly rejected higher limits.

Noting that this application had errors, Canal requested resubmission of the application. On January 8, 2001, Trucking submitted another application form but this time mistakenly checked the box beside the words, "Accept UM limits equal to liability limits." (Am. Compl. Ex. 6.) In fact, as is agreed to by all of the parties, Trucking wanted to continue with UM limits at the lower level of 25/50/20.[3]

When Canal received the incorrectly checked form, it advised Lebanon, the local insurance agent, that the higher UM coverage would require a higher premium. In response, Lebanon simply "whited out" the date and wrong check mark on a copy

---

[2] The parties do not dispute that this meant UM limits of $25,000 per person for bodily injury, $50,000 per accident for bodily injury, and $20,000 for property damage.

[3] It is not alleged who mistakenly checked the wrong box. The mistake may have been by one of Lebanon's employees, although it appears that Jim Rowe actually signed the form. Jim Rowe is now deceased.

-3-

of the submitted form, checked the correct box, re-dated the form as January 31, 2001, and resubmitted it on Trucking's behalf.[4]

Following these events, on December 3, 2001, one of Trucking's employees, Roger Raymond Baldwin, was injured in an accident with another vehicle while driving one of the company trucks. In 2003, Baldwin made a claim for bodily injury under the UM coverage of the Policy. During its investigation of the claim, Canal learned that Jim Rowe had not actually re-signed the January 31, 2001 form that contained the rejection of higher limits. Believing that this constituted an invalid rejection of the higher limits, but without seeking any judicial determination of the question, on December 13, 2005, Canal paid Baldwin $500,000 in settlement of his UM claim.[5]

Canal seeks recovery of this payment based on certain indemnity provisions of the Brokerage Agreement and the Agency Agreement. The Brokerage Agreement between Lebanon and Piedmont provides as follows:

> The BROKER [Lebanon] agrees to hold PIEDMONT and its employees and representatives completely harmless from, and to

---

[4] There was one other change made. In the description of the insured's trucking business, the words "Gravel & Stone" were replaced by "Logs & Pulp Wood." (Am. Compl. Ex. 6 & 7.) This change has no significance to the present issue.

[5] Canal alleges that Baldwin demanded $750,000, the full amount of the liability coverage.

-4-

> reimburse PIEDMONT for, any expense, loss or damage sustained by PIEDMONT by reason of any act or omission of BROKER, its employees or representatives.

(Am. Compl. Ex. 2, ¶ E.) Canal claims that it is a third-party beneficiary of this provision.

The Agency Agreement between Piedmont and Canal provides as follows:

> The Agent [Piedmont] shall indemnify and save the Company [Canal] from any and all expenses, costs, causes of action and damages resulting from or growing out of unauthorized acts or transactions by him, his employees, or sub-agents under his control.

(Am. Compl. Ex. 3, ¶ A(5).) Canal claims that Lebanon was Piedmont's sub-agent within the meaning of this provision.[6]

II

Lebanon and Piedmont have asserted a number of defenses to Canal's action. While several of them may have merit, the argument that goes to the heart of the case is the most compelling—that the submission of the January 31, 2001 "whited-out" form did not bind Canal to pay the higher limits of coverage to Baldwin and Canal's

---

[6] The Brokerage Agreement between Lebanon and Piedmont in fact states that Lebanon is not to be considered Piedmont's agent, but rather the agent of any insured. (Am. Compt. Ex. 2, ¶ C.) Canal claims that the facts will show otherwise.

payment of any settlement over the lower limits was Canal's mistake, for which neither Lebanon nor Piedmont is liable.[7]

Canal claims that Lebanon and Piedmont are liable to it under the indemnity contract provisions because Lebanon "wrongfully altered and submitted the January 8 Application" (Am. Compl. ¶ 30) which caused Canal to make the $500,000 payment to Baldwin. As Canal argues in its brief, Lebanon "failed to make sure" that Trucking rejected the higher limits by following "the procedures required by Virginia law . . . . with the results that UM limits equal to the Policy's liability limits were clearly in effect for [Trucking] at the time of the accident in question." (Pl.'s Br. Opp'n to Piedmont's Mot. Dismiss 13.)[8] I disagree.

Virginia Code section 38.2-2206 provides that an insured must reject higher limits of UM coverage by notifying the insurance company "as provided in subsection B of § 38.2-2202." That section in turn limits its application to <u>new</u> policies of

---

[7] The facts surrounding this issue, as recited in this Opinion, are undisputed and are essentially as alleged in the Amended Complaint. It is thus appropriate to decide the case on the Motions to Dismiss, since the Amended Complaint fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). It is not necessary for me to decide the other grounds for dismissal or the Partial Motion for Summary Judgment filed by Lebanon, in which it is argued that the measure of damages recoverable by Canal is the premium difference between the lower and higher UM coverages, which is $431.60.

[8] In its Amended Complaint, Canal puts it this way: "Based upon [Lebanon's] wrongful and unauthorized conduct in failing properly to obtain a rejection of UM limits equal to the Policy's liability limits, the Policy's UM limits were deemed to be $750,000." (Am. Compl. ¶ 42.)

-6-

insurance. Va. Code Ann. § 2202(B) (2007);[9] *Atkinson v. Penske Logistics, LLC,*

---

[9] The subsection provides as follows:

No new policy or original premium notice of insurance covering liability arising out of the ownership, maintenance, or use of any motor vehicle shall be issued or delivered unless it contains the following statement printed in boldface type, or unless the statement is attached to the front of or is enclosed with the policy or premium notice:

IMPORTANT NOTICE

IN ADDITION TO THE INSURANCE COVERAGE REQUIRED BY LAW TO PROTECT YOU AGAINST A LOSS CAUSED BY AN UNINSURED MOTORIST, IF YOU HAVE PURCHASED LIABILITY INSURANCE COVERAGE THAT IS HIGHER THAN THAT REQUIRED BY LAW TO PROTECT YOU AGAINST LIABILITY ARISING OUT OF THE OWNERSHIP, MAINTENANCE, OR USE OF THE MOTOR VEHICLES COVERED BY THIS POLICY, AND YOU HAVE NOT ALREADY PURCHASED UNINSURED MOTORIST INSURANCE COVERAGE EQUAL TO YOUR LIABILITY INSURANCE COVERAGE:

1. YOUR UNINSURED AND UNDERINSURED MOTORIST INSURANCE COVERAGE HAS INCREASED TO THE LIMITS OF YOUR LIABILITY COVERAGE AND THIS INCREASE WILL COST YOU AN EXTRA PREMIUM CHARGE; AND

2. YOUR TOTAL PREMIUM CHARGE FOR YOUR MOTOR VEHICLE INSURANCE COVERAGE WILL INCREASE IF YOU DO NOT NOTIFY YOUR AGENT OR INSURER OF YOUR DESIRE TO REDUCE COVERAGE WITHIN 20 DAYS OF THE MAILING OF THE POLICY OR THE PREMIUM NOTICE, AS THE CASE MAY BE. THE INSURER MAY REQUIRE THAT SUCH A REQUEST TO REDUCE COVERAGE BE IN WRITING.

3. IF THIS IS A NEW POLICY AND YOU HAVE ALREADY SIGNED A WRITTEN REJECTION OF SUCH HIGHER LIMITS IN CONNECTION WITH IT, PARAGRAPHS 1 AND 2 OF THIS NOTICE DO NOT APPLY.

After twenty days, the insurer shall be relieved of the obligation imposed by this subsection to attach or imprint the foregoing statement to any subsequently delivered renewal policy, extension certificate, other written statement of coverage continuance, or to any subsequently mailed premium notice.

Va. Code Ann. § 2202(B).

596 S.E.2d 518, 521 (Va. 2004) ("The policy in question in this case is a renewal policy. Notice under Code § 38.2-2202(B) is not applicable to renewal policies."); *GEICO v. Hall*, 533 S.E.2d 615, 617 (Va. 2000) ("[The amendment of the statute] amply demonstrate[s] the General Assembly's intent to remove renewal notices from the scope of Code § 38.2-2202(B)."); *USAA Cas. Ins. Co. v. Alexander*, 445 S.E.2d at 147 ("[O]nce the insured has effectively reduced the level of coverage by notifying the insurer, in accordance with Code § 38.2-2202(B), the waiver and reduction of coverage remains in effect during subsequent renewals of the policy.").

Because Trucking had already validly rejected the higher limits of coverage when it first obtained the Policy, and because Canal was not issuing a new policy of insurance, there was no requirement under section 38.2-2202(B) that Trucking again affirmatively reject such coverage. Thus, whether or not the insured actually signed the January 31 application form is of no legal consequence. The true state of affairs was as stated in that form—as before, the insured did not want the higher level of coverage.

Canal relies on the Fourth Circuit's decision in *White v. National Union Fire Insurance Co.*, 913 F.2d 165 (4th Cir. 1990). That case involved a declaratory judgment action to determine the proper limits of UM coverage under a Virginia policy. The facts showed that the insured returned a form to the insurance company

-8-

but neglected to check any of the UM coverage alternatives. While the insurance company argued that the insured, a trucking company, had consistently elected minimum coverage in other states, the court found that it could not rely on the insured's business practice, in light of the clear statutory requirement. The insurance company also pointed out that the insured had written to the insurance company asking for basic limits, but that letter came after the twenty-day period prescribed for rejection by the statute.

Although the policy in *White* was a renewal policy, the events occurred in 1984, before the present statute was amended to restrict it to new policies. *See GEICO v. Hall*, 533 S.E.2d at 617-18 (explaining that Va. Code Ann. § 38.1-380.2(B), the predecessor to section 38.2-2202(B), was repealed in 1986, and that the former statute expressly applied to both new and renewal policies).[10]

To the extent that the court in *White* may appear to apply the current statute, I believe that subsequent decisions by the Virginia Supreme Court have diminished its precedential value. In *White*, the insurance company argued that it was entitled to rely on an earlier proper rejection of the higher limits by its insured, but the court held

---

[10] As I have explained to the parties, I was the chief sponsor, while a member of the State Senate and of the Virginia Code Commission, of the bill in 1986 that repealed title 38.1 and adopted title 38.2, containing Virginia's insurance statutes. *See* Va. Code Ann. § 38.2-100, Editor's Note (2007) (describing history of title 38.2). That fact has no significance in the decision in this case.

-9-

that because the insurance company sent the coverage forms to its insured, thus "precipitating" the invalid rejection of the higher limits, it could not avoid "the lack of a statutorily required rejection." 913 F.2d at 169-70.

In *USAA Casualty Insurance Co. v. Alexander,* decided after *White*, the insurance company sent the insured a waiver form for UM limits in connection with a renewal policy, but the insured did not return it. The trial court held that because the insurance company had sent the insured the form, that "triggered a new policy limit selection decision" and absent an affirmative rejection, caused the higher limits to apply. 445 S.E.2d at 147. The Supreme Court of Virginia reversed, holding that section 38.2-2202(B) did not apply to the renewal policy and "the mere fact that [the insurance company] sent [the insured] a waiver form was not sufficient to negate [his] earlier decision to reject the higher limits of UM coverage." *Id.*

Following *Alexander*, in *GEICO v. Hall*, the insurance company routinely sent the named insureds, a husband and wife, a UM limits waiver form in connection with each renewal of their automobile liability policy. 533 S.E.2d at 615-16. In 1991, only the wife signed the form, rejecting the higher limits of coverage. In 1992, the husband having passed away, the wife again signed the form, rejecting higher coverage, but did not return the form within twenty days, as required by section 38.2-2202(B) and as specified in the form sent by the insurance company. The trial court

-10-

held that both the 1991 and 1992 waivers were ineffective and that the higher coverage limits prevailed in regard to a later accident. *Id.* at 616. The Supreme Court reversed, holding that (1) section 38.2-2202(B) expressly did not apply to renewal policies and (2) the fact that the form sent to the insured required a rejection of the higher UM limits within twenty days was not determinative, when the unequivocal facts showed that the insured did not want the higher limits of coverage. *Id.* at 617-18.

In this case, as in *Alexander*, the insurance company sent a waiver form to the insured, but the statute did not require a waiver for a renewal policy. In this case, as in *Hall*, the insured returned an arguably invalid waiver form to the insurance company, but it was without legal significance because it was in connection with a renewal policy. Just as in *Alexander*, the facts here are unequivocal that the insured did not desire the higher limits of UM coverage.

Simply stated, I can find no principled difference between the present case and the post-*White* decisions of the Supreme Court of Virginia, which decisions are binding on this court as to the proper construction of Virginia insurance law. *See Erie R.R. v. Tompkins*, 304 U.S. 64, 78-79 (1938).

III

Canal reasonably construes the indemnity agreements on which it relies as requiring proof that Lebanon's failure to have Trucking re-sign the January 31, 2001 form was a breach of Lebanon's professional duty that caused Canal's liability under the Policy.[11] Because I find as a matter of law that it did not, Canal cannot recover in this action.

Canal argues that because it alleges that it tendered the defense of Baldwin's claim to Lebanon, which Lebanon did not accept, the reasonableness of its settlement must be left until another day and cannot be decided on the present pleadings.[12] While that would be true if the claim were uncertain in amount or ultimate success, my view of the law convinces me that the settlement was not the product of any conduct by Lebanon, but by Canal's own misinterpretation of the law. Accordingly, judgment on the pleadings is appropriate.

---

[11] The Brokerage Agreement between Lebanon and Piedmont provides that North Carolina law is to be applied. (Am. Compl. Ex. 2 ¶ E.) The Agency Agreement has no choice of law provision, although it was between a North Carolina corporation and a South Carolina corporation. (Am. Compl. Ex. 3.) It is the rule in both states that a contract of indemnity will not be construed to permit indemnity where the indemnitee is at fault unless otherwise clearly expressed. *See Fed. Pac. Elec. v. Carolina Prod. Enters.*, 378 S.E.2d 56, 57 (S.C. Ct. App. 1989); *Hill v. Carolina Freight Carriers Corp.*, 71 S.E.2d 133, 137 (N.C. 1952).

[12] Canal does not allege that it gave notice of Baldwin's claim to Piedmont.

For these reasons, the Motions to Dismiss will be granted. A separate Final Order will be entered herewith.

DATED: April 13, 2008

/s/ JAMES P. JONES
Chief United States District Judge